UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

REMCODA, LLC,

                        *Plaintiff*,

-against-

RIDGE HILL TRADING (PTY) LTD, ATARAXIA CAPITAL PARTNERS PTY LTD, DE RAJ GROUP AG, PETRICHOR CAPITAL SDN BHD, PETRICHOR CAPITAL TRADING LIMITED, VAIDYANATHAN MULANDRAM NATESHAN, GAYATHRI VAIDYANATHAN, MENUSHA GUNAWARDHANA, AND VINCENT FLETCHER,

                        *Defendants*.

------------------------------------------------------------------X

Civil Action No. 1:21-cv-00979

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Remcoda, LLC ("Plaintiff"), by its attorneys, Oved & Oved LLP, complaining of Defendants Ridge Hill Trading (PTY) LTD ("Ridge Hill"), Ataraxia Capital Partners PTY LTD ("Ataraxia"), De Raj Group AG ("De Raj"), Petrichor Capital SDN BHD ("Petrichor Malaysia"), Petrichor Capital Trading Limited ("Petrichor UK"), Vaidyanathan Mulandram Nateshan ("Nateshan"), Gayathri Vaidyanathan ("Vaidyanathan"), Menusha Gunawardhana ("Gunawardhana"), and Vincent Fletcher ("Fletcher") (collectively, "Defendants"), alleges as follows:

**NATURE OF ACTION**

1. As the COVID-19 pandemic ravaged the country, Plaintiff agreed to procure and provide certain personal protective equipment to two of the nation's largest food distribution companies to allow them to safely continue to provide food services. To comply with its commitments, Plaintiff scoured the globe for sources of personal protective equipment.

2.      Aware of Plaintiff's pressing time constraints, Defendants held themselves as having significant expertise in acquiring personal protective equipment from international sources and repeatedly assured Plaintiff that they had all necessary stock in their possession to timely meet Plaintiff's requirements. Based on these representations, Plaintiff paid Defendants a deposit of over $4,630,874 and expected Defendants to perform by delivering the bargained-for goods in a few short weeks.

3.      In reality, Defendants never intended to perform. Instead, Defendants jointly engaged in a sophisticated scheme to defraud Plaintiff into paying them millions of dollars, including by providing fraudulent photographs, emails, and documents and hiding behind a web of interrelated shell companies, with the sole intention of retaining Plaintiff's deposit.

4.      Accordingly, Plaintiff brings this action to recover its deposit, lost profits, and out of pocket expenses resulting from Defendants' fraud, breach of contracts, and other misconduct.

## PARTIES

5.      Plaintiff is a New York limited liability company, with a principal place of business in New York, New York.

6.      Defendant Ridge Hill Trading (PTY) LTD, upon information and belief, is an Australian proprietary company with an office located at Level 4 67A Gregory's Road, Colombo 07, Sri Lanka and an office in Melbourne, Australia.

7.      Defendant Ataraxia Capital Partners PTY LTD, upon information and belief, is an Australian proprietary company with a principal place of business located at Level 4 67A Gregory's Road, Colombo 07, Sri Lanka (the same office address as Ridge Hill) and an office in Melbourne, Australia.

8.      Ridge Hill and Ataraxia, upon information and belief, share an office address, have an overlap in ownership and directors, including Sharad Sri and Asanth Sebastian, and

personnel, and their owners, directors, and employees use Ataraxia email addresses to conduct business purportedly on behalf of Ridge Hill.  Upon information and belief, Ridge Hill and Ataraxia are not treated as independent profit centers, and funds are commingled between Ridge Hill and Ataraxia.  Ridge Hill and Ataraxia, upon information and belief, do not deal with each other at arm's length, use each other's property as if it were their own, and pay and guarantee the debts of each other.  In short, Ridge Hill and Ataraxia are alter egos.

9. Defendant De Raj Group AG, upon information and belief, is a German stock corporation with offices in Kuala Lumpur, Malaysia and Cologne, Germany.

10. Defendant Petrichor Capital SDN BHD, upon information and belief, is a Malaysian private limited company with a principal place of business in Kuala Lumpur, Malaysia.

11. Defendant Petrichor Capital Trading Limited, upon information and belief, is a United Kingdom private limited company that was previously known as "De Raj UK Limited" with a registered office located in the United Kingdom.

12. Defendant Vaidyanathan Mulandram Nateshan, upon information and belief, is an individual residing in India and the husband of Vaidyanathan.  Natesha, upon information and belief, is the chief executive officer and shareholder of De Raj and a director and principal of Petrichor Malaysia and Petrichor UK.

13. Defendant Gayathri Vaidyanathan, upon information and belief, is an individual residing in India and the wife of Nateshan.  Vaidyanathan, upon information and belief, is a shareholder of De Raj and a director and principal of Petrichor Malaysia and Petrichor UK.

14. At the direction of Nateshan and Vaidyanathan, De Raj, Petrichor Malaysia and Petrichor UK (collectively, the "De Raj Entities"), upon information and belief, use each other's

funds and assets for their own purposes and for the personal benefit of Nateshan and Vaidyanathan, and are not treated as independent profit centers. Such conduct, upon information and belief, has rendered De Raj insolvent, with its assets transferred to Petrichor Malaysia and Petrichor UK for Nateshan and Vaidyanathan's personal benefit, and De Raj has considered filing insolvency proceedings. De Raj's website identifies Petrichor Malaysia as part of De Raj's "management" and the De Raj Entities, upon information and belief, have an overlap in ownership and directors, including Nateshan and Vaidyanathan, and personnel, and common office space. The De Raj Entities, upon information and belief, do not have independent business discretion and are controlled by a common set of owners and management, including Nateshan and Vaidyanathan, commingle funds among each other, do not deal with each other at arm's length, pay and guarantee the debts of each other, and use each other's property as if it were their own. In short, the De Raj Entities are alter egos of Nateshan and Vaidyanathan.

15. Defendant Menusha Gunawardhana, upon information and belief, is an individual residing in Sri Lanka and an employee and/or agent of Ridge Hill.

16. Defendant Vincent Fletcher, upon information and belief, is an individual residing in the United Kingdom and an employee and/or agent of Ridge Hill.

## JURISDICTION AND VENUE

17. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are domiciled in different countries, and the amount in controversy exceeds $75,000.  agreement.

18. Venue is proper pursuant to the parties' July 16, 2020 agreement that sets venue in the courts of New York and pursuant to 28 U.S.C. § 1391.

## FACTS

**A.      Defendants' Scheme to Fraudulently Induce Plaintiff Begins**

19.     As the COVID-19 pandemic raged in the Summer of 2020, Plaintiff agreed to provide nitrile examination gloves for use as personal protective equipment to two of the country's largest food distribution companies.

20.     In early June 2020, Gunawardhana and Fletcher held themselves out to Plaintiff as agents of Ridge Hill and as having substantial experience and expertise in procuring personal protective equipment from international sources.  Gunawardhana and Fletcher represented to Plaintiff that Ridge Hill would be able to promptly supply gloves that met Plaintiff's specifications.

21.     Plaintiff advised Gunawardhana and Fletcher, as agents of Ridge Hill, that Plaintiff required both black and blue color gloves in a specific breakdown of sizes and repeatedly emphasized that it was imperative that the gloves conform to Plaintiff's specifications and be ready for delivery by July 31, 2020.

22.     On July 9, 2020, Gunawardhana advised Plaintiff that Ridge Hill would require Plaintiff to make a 50% deposit payment on the gloves, with the balance to be paid after an independent third party inspected the goods before delivery and provided a written report that was accepted by Plaintiff.  At the same time, Gunawardhana falsely claimed that delivery of the gloves "will be 7-10 working days after deposit."

23.     Plaintiff was hesitant to pay a deposit of several million dollars to an international company with whom Plaintiff had not previously done business and was not familiar.  Plaintiff repeatedly asked Gunawardhana and Fletcher, as agents of Ridge Hill, to advise how Ridge Hill intended to secure a sufficient stock of gloves that met Plaintiff's specifications.

24. To induce Plaintiff to enter into a contract with Ridge Hill and make a massive deposit payment, on July 13, 2020, Gunawardhana represented that "[w]e as in Ridgehill [sic] will ensure your money is secure." In furtherance of Defendants' scheme, on July 14, 2020, Gunawardhana fraudulently represented to Plaintiff that all of the stock that Plaintiff had requested was available to fulfill Plaintiff's order, by stating "all ok with the stock," "[o]nce agin [sic] don't worry we have the stock," and "[s]tock allocation will not be an issue." At the same time, Fletcher falsely claimed that Ridge Hill was "in continual dialogue with our key distributor."

25. On July 15, 2020, Gunawardhana again falsely advised Plaintiff that Ridge Hill had secured sufficient stock of the black gloves required by Plaintiff by writing that "we have secured the black from Superior." The next day, July 16, 2020, Gunawardhana repeated the false statement that Ridge Hill had secured sufficient stock of black gloves by claiming that "we pulled all [sic] all stops to secure the black" gloves. In furtherance of Defendants' scheme, on July 16, 2020, Fletcher fraudulently represented to Plaintiff that both black and blue gloves were in stock and available for delivery to Plaintiff.

26. Unknown to Plaintiff at the time, these representations were false and Ridge Hill had not secured any such stock of gloves, and had no intention of ever doing so.

27. With no way to verify Gunawardhana and Fletcher's representations, Plaintiff relied on Ridge Hill's agents' false statements and entered into an agreement with an asset-based lender to finance the purchase of the gloves from Ridge Hill at an interest rate of 24% per annum.

28. In further reliance on Gunawardhana's and Fletcher's false statements, on July 16, 2020, Plaintiff entered into an agreement with Ridge Hill pursuant to which Ridge Hill agreed to

provide both black and blue nitrile gloves in specific size breakdowns and pursuant to certain identified specifications (the "Agreement").

29. The Agreement provided that Ridge Hill would have all of the gloves ready for FOB delivery to Plaintiff by July 31, 2020 at a per box price of $6.85 with Plaintiff making a 50% deposit payment to Ridge Hill.

30. Pursuant to the Agreement, Ridge Hill was required to arrange for a third-party inspection company to inspect the goods prior to delivery to Plaintiff and to provide a written inspection report to Plaintiff. Plaintiff was obligated to pay the balance of the purchase price only after Plaintiff's receipt and acceptance of the inspector's report.

31. In the Agreement, Ridge Hill represented that it would perform due diligence "to the best of its ability and knowledge" on any third party with whom Ridge Hill would work concerning the Agreement and Ridge Hill's obligations thereunder.

32. On July 16, 2020, Ridge Hill provided a commercial invoice to Plaintiff reflecting Plaintiff's order of 629,100 boxes of blue gloves and 722,980 of black gloves for a total purchase price of $9,261,748, which Plaintiff would pay in two 50% installments pursuant to the terms of the Agreement.

33. On July 20, 2020, Plaintiff wired the 50% deposit in the amount of $4,630,874 to Ridge Hill and, pursuant to the Agreement, Ridge Hill was required to have the gloves ready for delivery to Plaintiff by July 31, 2020.

**B.   Defendants Fail to Perform, Continue Their Scheme to Defraud, and Attempt to Extract More Money from Plaintiff**

34. With over $4.6 million of Plaintiff's funds now in their possession, Defendants' scheme to defraud Plaintiff and retain as much of the deposit as possible without ever delivering the gloves started to become clear.

35. On July 23, 2020, in furtherance of Defendants' scheme, Gunawardhana sent Plaintiff photographs of boxes of gloves purportedly allocated for Plaintiff's order. Thereafter, on July 27, 2020, Gunawardhana again falsely advised Plaintiff that "[w]e have got all the stock allocated to us today" and that the goods have already passed an inspection.

36. Ridge Hill, however, refused to provide proof of such inspection, vaguely claiming that another inspection would be performed. At the same time, on July 27, 2020, Gunawardhana attempted to unilaterally change the terms of the Agreement by demanding that Plaintiff immediately wire to Ridge Hill the balance of the purchase price (another $4,630,874) without Plaintiff's receipt and acceptance of an inspection report. Plaintiff refused and demanded that Ridge Hill perform pursuant to the Agreement.

37. The next day, on July 28, 2020, Gunawardhana sent Plaintiff a fraudulent email from Vaidyanathan falsely claiming that "government intervention" in Vietnam was delaying Plaintiff's order, but assuring that the De Raj Entities' "connections at the most senior level in VGloves and the relevant government ministries" would provide a "big advantage" and the gloves would be ready for delivery shortly. In forwarding the fraudulent email to Plaintiff, Gunawardhana falsely assured Plaintiff that an inspection of the gloves had been scheduled for July 30, 2020, and the goods would be shipped on August 8, 2020.

38. Despite repeatedly advising Plaintiff that Ridge Hill had sourced and secured full stock of all of the gloves that Plaintiff had ordered, Ridge Hill failed to deliver the gloves to Plaintiff by July 31, 2020 as required by the Agreement. Instead, with knowledge that Plaintiff had time sensitive commitments to supply the gloves to its customers and to repay its lender, Defendants pressed forward with their fraudulent scheme to prevent Plaintiff from defaulting

Ridge Hill and taking steps to obtain a refund of the deposit by continuing to misrepresent that delivery of gloves was imminent.

39. In furtherance of this scheme, on July 31, 2020 – two days after the supposedly scheduled inspection – Gunawardhana now claimed that Ridge Hill could not obtain any black gloves to deliver to Plaintiff, despite Ridge Hill's prior representations that all stock was secured, and offered to provide additional blue gloves as replacements.

40. Due to pressing time constraints, Plaintiff's commitments to its customers, and ever-increasing amounts of interest owed by Plaintiff to its lender, Plaintiff was forced to agree to accept blue gloves in lieu of black gloves, but continued to advise Ridge Hill that time was of the essence.

41. Well aware of the leverage they held over Plaintiff, Defendants next sought to extract even more funds from Plaintiff despite Defendants' intent to never perform. On August 2, 2020, Gunawardhana wrote to Plaintiff claiming that its over $4.6 million deposit had been "used up" and Plaintiff would have to immediately wire the second installment payment of $4,630,874, despite the fact that Ridge Hill had still not provided Plaintiff with an independent inspection report for review and acceptance, as required by the Agreement.

42. Later on August 2, 2020, Fletcher brazenly attempted to increase the Agreement's purchase price and demanded that Plaintiff immediately pay a total of $11 million to receive the gloves by the end of August – one month after Ridge Hill was required to deliver the gloves under the Agreement.

43. In other words, Fletcher, as an agent of Ridge Hill, aware of Plaintiff's mounting interest payments and pressing business need for the gloves, maliciously threatened to not deliver

any gloves unless Plaintiff paid an additional and unwarranted $1,738,252 on entirely different payment terms simply to receive nonconforming gloves one month after their delivery was due.

44. Plaintiff refused and demanded that Ridge Hill provide the gloves immediately.

45. Thereafter, in the hopes of retaining the full deposit paid by Plaintiff and to forestall any further action by Plaintiff, on August 2, 2020, Gunawardhana assured Plaintiff that Ridge Hill would still supply the gloves and falsely represented that the gloves would be delivered in two shipments on August 13 and 15, 2020. Gunawardhana doubled down on August 3, 2020, by falsely advising Plaintiff that an inspection of the gloves had been booked and a report was forthcoming.

46. Around this time, Ridge Hill disclosed to Plaintiff that it had been working with Nateshan and the De Raj Entities to fulfill Ridge Hill's obligations under the Agreement and claimed that Ridge Hill had transferred the deposit payment made by Plaintiff to Nateshan and his entities.

47. In furtherance of their scheme to defraud Plaintiff and prevent Plaintiff from declaring a default, Natheshan provided Plaintiff with purported payment receipts from the De Raj Entities to a factory that was supposedly manufacturing the gloves that Plaintiff had ordered. Plaintiff later learned that the factory receipts were apparently fraudulent and, upon information and belief, created by Defendants to conceal their fraud and theft of Plaintiff's deposit from Plaintiff.

48. On August 4, 2020, Fletcher sent Plaintiff another fraudulent email from Vaidyanathan that appeared to forward an email from SGS Vietnam Ltd, a third-party inspection company, scheduling an inspection for August 7, 2020. Defendants immediately tried to use this phony email to extract additional unwarranted funds from Plaintiff when, on August 4, 2020,

Gunawardhana attempted to condition delivery of the gloves on Plaintiff making an additional payment, contrary to the Agreement's terms: "the single biggest subject for you is making the transfer of funds for this happens [sic] before the NYC cut off today."

49. In advance of the purportedly scheduled inspection, on August 5, 2020, Gunawardhana again sent Plaintiff fraudulent photographs purportedly depicting gloves ready to be delivered to Plaintiff.

50. By August 10, 2020, Plaintiff had still not received the inspection report and Gunawardhana falsely advised Plaintiff that Ridge Hill would send the report "shortly." Ridge Hill failed to do so.

51. On August 14, 2020, Plaintiff again demanded the inspection report, but Gunawardhana refused, instead cryptically stating that once all of the gloves had been packed, Plaintiff would receive the report.

C. **Plaintiff Terminates the Agreement and Defendants Fail to Refund the Deposit**

52. By August 25, 2020, Plaintiff had still not received an inspection report, the gloves had not been delivered, and Ridge Hill had entirely failed to perform. Accordingly, by letter to Ridge Hill, copying the De Raj Entities, dated August 25, 2020, Plaintiff terminated the Agreement and demanded repayment of the $4,630,874 that Plaintiff had paid.

53. Defendants, upon information belief, had already converted and misused Plaintiff's deposit for their own personal benefit, and had no intention of fully refunding the deposit. Instead, to maintain their scheme and forestall Plaintiff from taking action, Defendants attempted to shift Plaintiff's attention to the De Raj Entities and Nateshan to create further delay, wear down Plaintiff, and retain as much of the deposit as possible.

54. By letter dated August 27, 2020, Vaidyanathan wrote as a director of Petrichor Malaysia to Plaintiff. The letter's subject was "Acceptance for refund of funds paid for purchase of Nitrile Gloves." In the letter, Vaidyanathan confirmed that Petrichor Malaysia is "a related company" to De Raj and Petrichor UK, and promised that "we will refund the amount paid for the supply of Nitrile powder free gloves from Vietnam on FOB basis." The letter further advised that although "the funds were transferred to De Raj UK [*i.e.* the entity now known as Petrichor UK], we will use the Malaysia entity [*i.e.* Petrichor Malaysia] for the purpose of the return of funds." In the letter, Vaidyanathan confirmed that the De Raj Entities commingle funds and use each other's funds to pay their debts, by writing that "we will be using our group resources to make this refund and payments will come to you, with pre-notification from any of our entities worldwide." The letter promised that the De Raj Entities would start transferring funds to Plaintiff immediately.

55. On September 2, 2020, Plaintiff received a partial payment of $1 million by wire from Petrichor UK. Thereafter, on September 15, 2020, Plaintiff received another partial payment of $1 million by wire from Petrichor Malaysia.

56. On or around October 26, 2020, Petrichor Malaysia, upon information and belief, transferred $200,000 to Ridge Hill, which Ridge Hill then transferred to Plaintiff as a partial payment.

57. By letter dated October 31, 2020, Nateshan as "Group Chief Executive Officer" for De Raj UK Limited (now known as Petrichor UK) wrote to Ridge Hill with the subject "Refund of the amount paid towards purchase of Nitrile Gloves on account of cancellation of order." Nateshan recited in the letter that the De Raj Entities had paid $2.2 million to Plaintiff in connection with the Agreement, acknowledged that an additional $2,430,836.65 remained due

and owing to fully refund Plaintiff's deposit, and confirmed that the De Raj Entities would pay that balance pursuant to the following payment schedule:

| | |
|---|---|
| 16th of November 2020 | 450,000 USD |
| 27th of November 2020 | 550,000 USD |
| 11th of December 2020 | 600,000 USD |
| 18th of December 2020 | 450,000 USD |
| 30th of December 2020 | 380,836 USD |

58. Defendants have failed to make any additional payments to Plaintiff.

59. As a result of Defendants' fraudulent scheme, breaches and other misconduct, Plaintiff was unable to meet its commitments to provide nitrile gloves to its customers and lost profits in the amount of at least $676,040. Moreover, Plaintiff has been unable to repay its lender for the financing provided in connection with the Agreement and Plaintiff has been forced to pay $648,323 in interest as of the date of this Complaint, which interest continues to accrue.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(Fraudulent Inducement Against Defendants)**

60. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

61. As set forth above, Defendants fraudulently induced Plaintiff to enter into the Agreement by making materially false and misleading representations, and omitting material information peculiarly within Defendants' knowledge.

62. Prior to entering into the Agreements, Defendants did not intend to perform.

63. Defendants had actual knowledge of the materially false and misleading representations and omissions in their communications with Plaintiff; or, in the alternative,

Defendants had a reckless disregard of the materially false and misleading representations and omissions contained therein.

64. Defendants were aware that, given their purported expertise and experience in procuring and delivering personal protective equipment from international sources, that Plaintiff would rely upon Defendants' representations in determining to enter into the Agreement.

65. Plaintiff relied on Defendants' misrepresentations in deciding to execute the Agreement.

66. Plaintiff was unaware of, and could not have discovered through the exercise of reasonable diligence, Defendants' materially false and misleading representations and omissions.

67. As set forth above, Ridge Hill and Ataraxia, upon information and belief, share an office address, have an overlap in ownership and directors, including Sharad Sri and Asanth Sebastian, and personnel, and their owners, directors, and employees use Ataraxia email addresses to conduct business purportedly on behalf of Ridge Hill. Upon information and belief, Ridge Hill and Ataraxia are not treated as independent profit centers, and funds are commingled between Ridge Hill and Ataraxia. Ridge Hill and Ataraxia, upon information and belief, do not deal with each other at arm's length, use each other's property as if it were their own, and pay and guarantee the debts of each other. As such, Ridge Hill and Ataraxia are alter egos.

68. As set forth above, at the direction of Nateshan and Vaidyanathan, and the De Raj Entities, upon information and belief, use each other's funds and assets for their own purposes and for the personal benefit of Nateshan and Vaidyanathan, and are not treated as independent profit centers. Such conduct, upon information and belief, has rendered De Raj insolvent, with its assets transferred to Petrichor Malaysia and Petrichor UK for Nateshan and Vaidyanathan's personal benefit. De Raj's website identifies Petrichor Malaysia as part of De Raj's

Case 1:21-cv-00979-ER   Document 1   Filed 02/03/21   Page 15 of 19

"management" and the De Raj Entities, upon information and belief, have an overlap in ownership and directors, including Nateshan and Vaidyanathan, and personnel, and common office space. The De Raj Entities, upon information and belief, do not have independent business discretion and are controlled by a common set of owners and management, including Nateshan and Vaidyanathan, commingle funds among each other, do not deal with each other at arm's length, pay and guarantee the debts of each other, and use each other's property as if it were their own. As such, the De Raj Entities are alter egos of Nateshan and Vaidyanathan.

69. As a direct and proximate result of Defendants' fraud, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,755,199.65, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## AS AND FOR A SECOND CLAIM FOR RELIEF
**(Aiding and Abetting Fraud Against Nateshan, Vaidyanathan, and the De Raj Entities)**

70. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

71. In the alternative that the Court does not find that Nateshan, Vaidyanathan, and the De Raj Entities directly defrauded Plaintiff, as set forth above, Nateshan, Vaidyanathan, and the De Raj Entities aided and abetted the fraud committed by Ridge Hill, Ataraxia, Gunawardhana and Fletcher.

72. As set forth above, Nateshan, Vaidyanathan, and the De Raj Entities knowingly participated in the fraud and provided substantial assistance by knowingly providing false and fraudulent documents and communications to Ridge Hill and its agents with the knowledge that such fraudulent documents would be sent to and relied upon by Plaintiff, and by receiving Plaintiff's deposit from Ridge Hill for the benefit of all Defendants.

Page 15

73. As set forth above, Nateshan, Vaidyanathan, and the De Raj Entities are alter egos.

74. As a direct and proximate result of Nateshan, Vaidyanathan, and the De Raj Entities misconduct, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,755,199.65, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (Breach of Contract Against Ridge Hill and Ataraxia)

75. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

76. As set forth above, Plaintiff and Ridge Hill entered into a valid and binding contract.

77. As set forth above, Plaintiff fully performed under the parties' contract.

78. As set forth above, Ridge Hill breached the parties' contract.

79. As set forth above, Ridge Hill and Ataraxia are alter egos.

80. As a direct and proximate result of Ridge Hill's and Ataraxia's breach of the Agreement, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,755,199.65, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Breach of Contract Against Nateshan, Vaidyanathan, and the De Raj Entities)

81. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

82. As set forth above, the De Raj Entities agreed in writing to answer to Plaintiff for the debts of Ridge Hill.

83. As set forth above, the De Raj Entities failed to perform.

84. As set forth above, Nateshan, Vaidyanathan, and the De Raj Entities are alter egos.

85. As a direct and proximate result of Nateshan, Vaidyanathan, and the De Raj Entities' breach, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,755,199.65, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### (Money Had and Received Against Defendants)

86. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

87. As set forth above, Defendants received $4,630,874 belonging to Plaintiff and Defendants have benefitted from receipt of Plaintiff's money.

88. In the alternative that the Court does not find that a contract existed between Plaintiff and any of the Defendants, the Court should find that principles of equity and good conscience do not permit Defendants to retain the $4,630,874 paid by Plaintiff.

89. As a direct and proximate result of Defendants' misconduct, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,755,199.65, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment Against Defendants)

90. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

91. As set forth above, Defendants have been unjustly enriched at Plaintiff's expense.

92. In the alternative that the Court does not find that a contract existed between Plaintiff and any of the Defendants, the Court should find that principles of equity and good conscience do not permit Defendants to retain the $4,630,874 paid by Plaintiff.

93. As a direct and proximate result of Defendants misconduct, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $3,755,199.65, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## JURY DEMAND

Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby requests that the Court grant the following relief:

a. Judgment in Plaintiff's favor and against Defendants in an amount to be determined at trial, but in no event less than $3,755,199.65, plus pre-judgment interest;

b. Plaintiff's costs and disbursements incurred in this suit;

c. Plaintiff's attorneys' fees to the full extent permitted by law; and

d. Any such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       February 3, 2021

                              By:    /s/ Glen Lenihan
                                     Terrence A. Oved, Esq.
                                     Glen Lenihan, Esq.
                                     Elizabeth G. Uphaus, Esq.
                                     OVED & OVED LLP
                                     *Attorneys for Plaintiff*
                                     401 Greenwich Street
                                     New York, New York 10013
                                     Tel: 212.226.2376