UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REMCODA, LLC,

                    Plaintiff,

v.

RIDGE HILL TRADING (PTY) LTD,
ATARAXIA CAPITAL PARTNERS PTY LTD,
DE RAJ GROUP AG, PETRICHOR CAPITAL
SDN BHD,   PETRICHOR CAPITAL TRADING
LIMITED, VAIDYANATHAN MULANDRAM
NATESHAN, GAYATHRI VAIDYANATHAN,
MENUSHA GUNAWARDHANA, VINCENT
FLETCHER, AND RUSSELL GROSS,

                    Defendants.

Civil Action No. 1:21-cv-00979-ER

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
PETRICHOR CAPITAL SDN BHD, PETRICHOR CAPITAL TRADING
LIMITED, VAIDYANATHAN MULANDRAM NATESHAN,
AND GAYATHRI VAIDYANATHAN'S MOTION TO DISMISS**

DORSEY & WHITNEY LLP

Daniel P. Goldberger
Kaleb McNeely
51 West 52nd Street
New York, New York 10019
(212) 415-9200
goldberger.dan@dorsey.com
mcneely.kaleb@dorsey.com

*Attorneys for Defendants Petrichor Capital Sdn Bhd,
Petrichor Capital Trading Limited, Vaidyanathan
Mulandram Nateshan, and Gayathri Vaidyanathan*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT FACTUAL ALLEGATIONS .......................................................... 3

A.    The Parties ................................................................................................ 3

B.    Plaintiff's Allegations Against Ridge Hill And Its Agents ...................... 5

C.    Plaintiff's Allegations Against The Petrichor Defendants ...................... 6

D.    Plaintiff's Causes Of Action Against The Petrichor Defendants ........... 9

ARGUMENT .................................................................................................... 10

A.    The Complaint Should Be Dismissed Because The Petrichor Defendants Are Not Subject To Personal Jurisdiction In New York ................................................................. 10

    1.    Legal standards ............................................................................ 10

    2.    This Court does not have general jurisdiction over the Petrichor Defendants ............................................................................. 11

    3.    This Court does not have specific jurisdiction over the Petrichor Defendants ............................................................................. 12

B.    Plaintiff's Allegations Against The Petrichor Defendants Should Be Dismissed For Failure To State A Claim .......................................................... 17

    1.    Plaintiff's claims against the individual Petrichor Defendants should be dismissed ............................................................................. 18

    2.    Plaintiff's claim for breach of contract should be dismissed because Plaintiff fails to adequately allege that the Petrichor Defendants had a contractual relationship with Plaintiff ................................ 21

    3.    Plaintiff's fraud-related claims against the Petrichor Defendants should be dismissed ............................................................................. 22

        a)    Plaintiff's claim for fraud in the inducement should be dismissed .......... 23

        b)    Plaintiff's claim against the Petrichor Defendants for aiding and abetting fraud should be dismissed ............................................................ 24

    4.    Plaintiff's quasi-contractual claims against the Petrichor Defendants should be dismissed because they are precluded by the Agreement with Ridge Hill ............................................................................. 27

CONCLUSION.............................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Capital Mgmt. v. Askin Capital Mgmt. L.P.*,
957 F. Supp. 1308 (S.D.N.Y. 1997)..................................................28

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
122 F.3d 130 (2d Cir. 1997)..........................................................18

*Art Assure Ltd., LLC v. Artmentum GmbH*,
No. 14 Civ. 3756 (LGS), 2014 U.S. Dist. LEXIS 156521 (S.D.N.Y. Nov. 4,
2014) ...................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................17

*AVRA Surgical Robotics, Inc. v. Gombert*,
41 F. Supp. 3d 350 (S.D.N.Y. 2014)..................................................15

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*,
57 F.3d 146 (2d Cir. 1995)............................................................22

*Bazak Int'l. Corp. v. Tarrant Apparel Grp.*,
347 F. Supp. 2d 1 (S.D.N.Y. 2004)..................................................28

*Bensusan Rest. Corp. v. King*,
126 F.3d 25 (2d Cir. 1997)............................................................13

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)......................................................12, 13

*Beth Isr. Med. Ctr. v. Verizon Bus. Network Servs.*,
No. 11 Civ. 4509 (RJS), 2013 U.S. Dist. LEXIS 49825 (S.D.N.Y. Mar. 18,
2013) ...............................................................................23, 27

*BHC Interim Funding, LP v. Bracewell & Patterson, LLP*,
No. 02 Civ. 4695 (LTS) (HBP), 2003 U.S. Dist. LEXIS 10739 (S.D.N.Y. June
25, 2003) ..............................................................................10

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
754 F.2d 57 (2d Cir. 1985)............................................................25

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016)..........................................................11

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit L.P.*,
491 B.R. 335 (S.D.N.Y. 2013) ................................................................................20

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ...................................................................................8

*Chloé v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) .................................................................................12

*Convergen Energy LLC v. Brooks*,
No. 20 Civ. 3746 (LJL), 2020 U.S. Dist. LEXIS 169256 (S.D.N.Y. Sep. 16,
2020) ....................................................................................................................15

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989) ....................................................................................23

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ...........................................................................................11

*Daventree Ltd v. Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004) ...................................................................14

*Deitrick v. Gypsy Guitar Corp.*,
No. 16 Civ. 616 (ER), 2016 U.S. Dist. LEXIS 179481 (S.D.N.Y. Dec. 28,
2016) ............................................................................................................12, 13, 15

*DeLorenzo v. Viceroy Hotel Grp., LLC*,
757 F. App'x 6 (2d Cir. 2018) .............................................................................11

*DH Servs., LLC v. Positive Impact, Inc.*,
No. 12 Civ. 6153 (RA), 2014 U.S. Dist. LEXIS 14753 (S.D.N.Y. Feb. 5,
2014) ....................................................................................................................15

*Dumont v. Litton Loan Servicing, LP*,
No. 12 Civ. 2677 (ER)(LMS), 2014 U.S. Dist. LEXIS 26880 (S.D.N.Y. Mar.
3, 2014) ................................................................................................................20

*Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*,
77 F. Supp. 3d 364 (S.D.N.Y. 2015) .....................................................................22

*Filler v. Hanvit Bank*,
No. 01 Civ. 9510 (MGC), 2003 U.S. Dist. LEXIS 15950 (S.D.N.Y. Sep. 12,
2003) ....................................................................................................................25

*Fischbarg v. Doucet*,
9 N.Y.3d 375, 880 N.E.2d 22, 849 N.Y.S.2d 501 (2007) .....................................13

*Fletcher v. Atex, Inc.*,
68 F.3d 1451 (2d Cir. 1995)...............................................................18

*Freeplay Music, LLC v. RIGOL Techs. USA, Inc.*,
18 Civ. 10980 (ER), 2020 U.S. Dist. LEXIS 18992 (S.D.N.Y. Feb. 4, 2020) .........................4

*Geoffrey A. Orley Revocable Tr. v. Genovese*,
No. 18 Civ. 8460 (ER), 2020 U.S. Dist. LEXIS 19418 (S.D.N.Y. Feb. 5, 2020) .......................................................................17, 25, 26

*Gurbachan Singh & Ors v Vellasamy Pennusamy & Ors & Or Appeals*, (Civil Appeal No. 02(f)-58-09/2013(A), 27 November 2014) [2015] 1 MLJ. ..........................18, 20

*Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*,
No. 11 Civ. 420 (RJH), 2012 U.S. Dist. LEXIS 8231 (S.D.N.Y. Jan. 24, 2012) .....................4

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996)...............................................................21

*Kalb, Voorhis & Co v. Am. Fin. Corp.*,
8 F.3d 130 (2d Cir. 1993) ...............................................................18

*Klutz v. Yagoozon, Inc.*,
No. 16 Civ. 4538 (JSR), 2016 U.S. Dist. LEXIS 133841 (S.D.N.Y. Sept. 20, 2016) .......................................................................13

*Krys v. Pigott*,
749 F.3d 117 (2d Cir. 2014)...............................................................24

*Lamarr v. Klein*,
35 A.D.2d 248 (1st Dep't 1970) ...............................................................14

*Law Debenture v. Maverick Tube Corp.*,
No. 06 Civ. 14320 (RJS), 2008 U.S. Dist. LEXIS 87438 (S.D.N.Y. Oct. 15, 2008) .......................................................................27

*Lehigh Valley Indus., Inc. v. Birenbaum*,
527 F.2d 87 (2d Cir. 1975)...............................................................14

*Levy v. Bessemer Tr. Co.*,
No. 97 Civ. 1785 (JFK), 1997 U.S. Dist. LEXIS 11056 (S.D.N.Y. July 30, 1997) .......................................................................22

*In re Lifetrade Litig.*,
No. 17 Civ. 2987 (JPO), 2021 U.S. Dist. LEXIS 59738 (S.D.N.Y. Mar. 29, 2021) .......................................................................11

*MAG Portolio Consultant, GMBH v. Merlin Biomed Grp. LLC*,
    268 F.3d 58 (2d Cir. 2001)..............................................................................18, 20

*Magdalena v. Lins*,
    123 A.D.3d 600, 999 N.Y.S.2d 44 (1st Dep't 2014) ...........................................12

*Met. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)..................................................................................11

*Mina Inv. Holdings Ltd. v. Lefkowitz*,
    16 F. Supp. 2d 355 (S.D.N.Y. 1998)....................................................................27

*Mtume v. Sony Music Entm't*,
    No. 18 Civ. 6037 (ER), 2020 U.S. Dist. LEXIS 150143 (S.D.N.Y. Aug. 19,
    2020) ...................................................................................................................21

*Musalli Factory for Gold & Jewelry Co. v. JP Morgan Chase Bank, N.A.*,
    382 F. App'x 107 (2d Cir. 2010) .........................................................................23

*N.Y. Univ. v. Cont'l Ins. Co.*,
    87 N.Y.2d 308 (1995) ..........................................................................................22

*Orkin v. Swiss Confederation*,
    770 F. Supp. 2d 612 (S.D.N.Y. 2011)..................................................................15

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
    478 F. Supp. 2d 496 (S.D.N.Y. 2007)..................................................................28

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997)...............................................................................13

*Prest v Petrodel Resources Ltd*,
    [2013] UKSC 34, [2013] 2 AC 415 [2013] ...................................................18, 20

*Prospect Funding Holdings, LLC v. Vinson*,
    256 F. Supp. 3d 318 (S.D.N.Y. 2017)..............................................................4, 10

*Purjes v. Plausteiner*,
    No. 15 Civ. 2515 (VEC), 2016 U.S. Dist. LEXIS 16345 (S.D.N.Y. Feb. 10,
    2016) .....................................................................................................................8

*Rensselaer Polytechnic Inst, v. Varian, Inc.*,
    340 F. App'x 747 (2d Cir. 2009) .........................................................................28

*Rich v. Maidstone Financial, Inc.*,
    No. 98 Civ. 2569 (DAB), 2002 U.S. Dist. LEXIS 24510 (S.D.N.Y. Dec. 20,
    2002) ....................................................................................................................23

*Richtone Design Grp. L.L.C. v. Classical Pilates, Inc.*,
No. 06 Civ. 0547 (NRB), 2006 U.S. Dist. LEXIS 64370 (S.D.N.Y. Aug. 21, 2006) ................................................................................................................15

*Segal v. Bitar*,
No. 11 Civ. 4521 (LBS), 2012 U.S. Dist. LEXIS 10812 (S.D.N.Y. Jan. 30, 2012) ................................................................................................................15

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014)....................................................................................11

*SPV OSUS, Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)....................................................................11, 24, 26

*In re SSA Bonds Antitrust Litig.*,
420 F. Supp. 3d 219 (S.D.N.Y. 2019)....................................................................16

*Stillwater Liquidating LLC v. Net Five Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*,
No. 16 Civ. 8883 (ER), 2018 U.S. Dist. LEXIS 54558 (S.D.N.Y. Mar. 30, 2018) ................................................................................................................27

*In re Terrorist Attacks on September 11, 2001*,
714 F.3d 659 (2d Cir. 2013)....................................................................................11

*Wexler v. Allegion (Uk)*,
No. 16 Civ. 2252 (ER), 2018 U.S. Dist. LEXIS 54655 (S.D.N.Y. Mar. 29, 2018) ................................................................................................................21

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001)....................................................................................10

*Wolff v. Rare Medium, Inc.*,
210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).......................21

**Other Authorities**

C.P.L.R. § 301...........................................................................................................12

C.P.L.R. § 302(a) ..............................................................................12, 13, 14, 15, 16

Fed. R. Civ. P. 9(b) ....................................................................................23, 24, 25

Fed. R. Civ. P. 12(b)(2)...........................................................................................1, 4, 10

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 17

N.Y.C.P.L.R. § 302(a)(1)-(3)....................................................................................13

22A N.Y. Jur. 2d Contracts § 515.................................................................................................29

United States Constitution Fifth Amendment...............................................................................12

Defendants Petrichor Capital Sdn Bhd ("Petrichor Malaysia"), Petrichor Capital Trading Limited ("Petrichor UK" and together with Petrichor Malaysia, the "Petrichor Entities"), Vaidyanathan Mulandram Nateshan ("Mr. Nateshan"), and Gayathri Vaidyanathan ("Ms. Vaidyanathan") (collectively, the "Petrichor Defendants") respectfully submit their memorandum of law in support of their motion to dismiss the claims of Plaintiff Remcoda, LLC ("Plaintiff" or "Remcoda") pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6), as follows.

## PRELIMINARY STATEMENT

In the summer of 2020, Plaintiff sought to profit from the COVID-19 pandemic by selling what was at that time a much sought-after product, nitrile gloves. In furtherance of its plan, Plaintiff entered into an agreement with an Australian entity, Ridge Hill Trading (PTY) LTD ("Ridge Hill"), whereby Ridge Hill was to supply Plaintiff with over 1.3 million boxes of gloves for a total purchase prices of $9,261,748.  Pursuant to its agreement with Ridge Hill, Plaintiff made an initial 50% deposit of $4,630,874 by wire transfer to Ridge Hill.

After entering into the contract with Plaintiff, Ridge Hill entered into a separate contract with Petrichor UK, pursuant to which Petrichor UK was to arrange for manufacture and shipping of the gloves from a factory located in Vietnam.  At that time, the Petrichor Defendants were not aware of the identity of Ridge Hill's end customer, Plaintiff, who was not referenced or identified in the Petrichor UK-Ridge Hill agreement.

After the factory in Vietnam experienced various delays in completing Ridge Hill's order, Plaintiff, unsatisfied with Ridge Hill's ability to deliver the gloves on the expected timeline, terminated its agreement with Ridge Hill and demanded that Ridge Hill repay its $4,630,874 deposit.  By that time, however, Ridge Hill had transferred the deposit to Petrichor UK, who had in turn paid the deposit to the Vietnamese factory.

At this point, Ridge Hill disclosed Plaintiff's identify to Petrichor UK and requested that

Petrichor UK return its deposit to their customer, Plaintiff. Petrichor UK agreed to assist in seeking a return of the deposit that had been advanced to the Vietnamese factory, and requested the factory to return that deposit. Although the Petrichor Entities had *no* contractual relationship with Plaintiff, the Petrichor Entities made payments to Plaintiff totaling $2.2 million out of their own funds while they awaited the return of the deposit from the Vietnamese factory. However, when it became clear that a refund from the Vietnamese factory was not imminent—and thus, the remainder of the deposit was not available—Plaintiff threatened legal action against every entity involved, including the Petrichor Defendants, even though Plaintiff had no contractual relationship with any of them. Plaintiff then sued not only Ridge Hill (the only party with whom it had a contract), but also the Petrichor Entities, and even two officers of those entities, Mr. Nateshan and his wife, Ms. Vaidyanathan *in their individual capacities* on the other side of the world in a jurisdiction to which they had no connection.

Whether Plaintiff has a valid claim for breach of contract against Ridge Hill is a matter for Plaintiff and Ridge Hill to litigate. It is clear, however, not only that Plaintiff has no valid claims against any of the Petrichor Defendants, but also that the Petrichor Defendants are not even subject to personal jurisdiction in New York. The Petrichor Defendants are residents of the U.K. and Malaysia, and none of them have offices or even do business in New York. The Petrichor Defendants are not parties to Plaintiff's agreement with Ridge Hill, and therefore the forum selection provision in that agreement is inapplicable to them. Indeed, Plaintiff's complaint does not even bother to include allegations supporting the exercise of personal jurisdiction over the Petrichor Defendants.

In any event, the factual allegations in the Complaint do not support the exercise of personal jurisdiction over the Petrichor Defendant under either New York's long-arm jurisdiction statute or

due process considerations. The Petrichor Defendants contracted with an Australian entity to manufacture gloves in Vietnam and were not even aware of Plaintiff's identity until after Plaintiff had signed its agreement with Ridge Hill and transferred its deposit to Ridge Hill.

Plaintiff's breach of contract, fraud, aiding and abetting, and quasi-contractual claims against the Petrichor Defendants should all be dismissed for the independent reason that each of them fails to state a claim. Plaintiff's claims against the individual Petrichor Defendants are based upon nothing but conclusory allegations, and in any event do not allege that the Petrichor Defendants abused the corporate form to commit fraud or any other misconduct.

Plaintiff's breach of contract claim is deficient because, *inter alia*, it fails to adequately allege the existence of a contract between Plaintiff and the Petrichor Defendants. Plaintiff's fraud-related claims are likewise deficient because Plaintiff fails to allege any statements or action by the Petrichor Defendants that induced Plaintiff to enter into its agreement with Ridge Hill or transfer the deposit to Ridge Hill. Finally, Plaintiff's quasi-contractual claims are not only inadequately pleaded, they are barred by the existence of the agreement with Ridge Hill, which relates to the same subject matter.

Because the Petrichor Defendants are not subject to personal jurisdiction in New York, and because Plaintiff's claims against them are legally and factually meritless, all of the claims against the Petrichor Defendants should be dismissed with prejudice.

## RELEVANT FACTUAL ALLEGATIONS

### A. The Parties

Remcoda is a New York limited liability company with a principal place of business in New York. Amended Complaint, dated June 30, 2021 (Dkt. No. 56) ("Complaint"), ¶ 5. Defendants Ridge Hill and Ataraxia Capital Partner PTY LTD ("Ataraxia") are Australian proprietary companies with offices located in Australia and Sri Lanka. *Id.*, ¶¶ 6-7. The Complaint

alleges that Defendants Menusha Gunawardhana ("Mr. Gunawardhana"), Vincent Fletcher ("Mr. Fletcher"), and Russell Gross ("Mr. Gross") are employees and/or agents of Ridge Hill and reside in Sri Lanka, the United Kingdom, and New York, respectively. *Id.*, ¶¶ 15-17. Defendant De Raj Group AG ("De Raj") is a German stock corporation with offices in Malaysia and Germany. *Id.*, ¶ 9.[1]

Petrichor Malaysia is a Malaysian private limited company with a principal place of business in Kuala Lumpur, Malaysia, while Petrichor UK is a United Kingdom private limited company with an office located in the United Kingdom. *Id.*, ¶¶ 10-11. Mr. Nateshan and his wife, Ms. Vaidyanathan, are residents of Malaysia and directors and principals of Petrichor Malaysia and Petrichor UK. Declaration of Vaidyanathan Mulandram Nateshan, dated August 10, 2021 ("Nateshan Declaration"), ¶ 3; Complaint, ¶¶ 12-13. Plaintiff alleges, in conclusory fashion and solely upon information and belief, that Petrichor Malaysia, Petrichor UK, and De Raj are alter egos of Mr. Nateshan and Ms. Vaidyanathan. Complaint, ¶ 14.

The Complaint lacks any allegations regarding the purported basis for personal jurisdiction over any of the Petrichor Defendants. *See generally id.* As set forth in the accompanying Nateshan Declaration,[2] none of the Petrichor Defendants is a resident of New York, nor do any of them have

---

[1] Ridge Hill, Ataraxia, Mr. Gunawardhana, and Mr. Fletcher, who are all represented by the same counsel, are filing their own motion to dismiss the Complaint in part. De Raj, which is not currently affiliated with any of the Petrichor Defendants, and Mr. Gross have not appeared in this action.

[2] The Court can consider documents beyond the pleadings in determining whether personal jurisdiction exists. *See Freeplay Music, LLC v. RIGOL Techs. USA, Inc.*, 18 Civ. 10980 (ER), 2020 U.S. Dist. LEXIS 18992, at *6 (S.D.N.Y. Feb. 4, 2020) ("As 12(b)(2) motions are 'inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings,' courts may rely on additional materials when ruling on such motions.") (quotation omitted); *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 320 n.1 (S.D.N.Y. 2017) ("The Court can also consider Prospect and Pilgrim's accompanying submissions (Docs. 33, 53, and 56), in considering Pilgrim's Rule 12(b)(2) motion.") (citing *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11 Civ. 420 (RJH), 2012 U.S. Dist. LEXIS 8231, at *4-5 (S.D.N.Y. Jan. 24,

any offices or do any business in New York. Nateshan Declaration, ¶¶ 3-7. During the course of the events at issue in this litigation, none of the Petrichor Defendants traveled to New York and, until mid-August 2020, the Petrichor Defendants were not even aware of the identity of Plaintiff, let alone that it was based in New York. *Id.*, ¶¶ 8-9.

**B.      Plaintiff's Allegations Against Ridge Hill And Its Agents[3]**

The Complaint alleges that during the summer of 2020 Plaintiff agreed to provide nitrile examination gloves for use as personal protective equipment ("PPE") to two large food distribution companies. Complaint, ¶ 20. In June 2020, Mr. Gross represented to Plaintiff that he had experience selling PPE, as well as manufacturing and supply relationships in the PPE industry. *Id.*, ¶ 21. In return for a 5% commission, Mr. Gross then introduced Plaintiff to Messrs. Gunawardhana and Fletcher, who allegedly advised Plaintiff that they were agents of Ridge Hill and could provide Plaintiff with nitrile examination gloves. *Id.*, ¶¶ 22-23.

Plaintiff then began negotiating the purchase of nitrile gloves with Ridge Hill. *Id.*, ¶¶ 24-25. On July 16, 2020, allegedly on the basis of Ridge Hill and its agent's statements that they could secure the black and blue gloves that Plaintiff needed, Plaintiff entered into an agreement with Ridge Hill pursuant to which Ridge Hill agreed to provide black and blue nitrile gloves in certain sizes and specifications (the "Agreement"). *Id.*, ¶¶ 35-39. The Agreement provided that Ridge Hill would have the gloves ready for delivery to Plaintiff by July 31, 2020, with Plaintiff making a 50% deposit payment to Ridge Hill. *Id.*, ¶ 40.

On July 16, 2020, Ridge Hill provided Plaintiff with a commercial invoice reflecting

---

2012) ("[A] court may consider documents beyond the pleadings in determining whether personal jurisdiction exists . . . .")).

[3] Plaintiff's allegations against Ridge Hill and its agents are summarized briefly to provide the Court with context and to illustrate that Plaintiff's dispute is with Ridge Hill, and not with the Petrichor Defendants.

Plaintiff's order of Plaintiff's order of 629,100 boxes of blue gloves and 722,980 of black gloves for a total purchase price of $9,261,748, which Plaintiff would pay in two 50% installments pursuant to the terms of the Agreement. *Id.*, ¶ 43. On July 20, 2020, Plaintiff wired the 50% deposit in the amount of $4,630,874 to Ridge Hill. *Id.*, ¶ 44. The Complaint alleges that Ridge Hill and its agents continued to assure Plaintiff that they had secured the gloves, but that Ridge Hill failed to deliver the gloves by July 31, 2020. *Id.*, ¶ 50. The Complaint further alleges that Ridge Hill and its agents claimed that they could not obtain any black gloves, demanded the second installment payment, and requested an additional payment to deliver the gloves by the end of August 2020. *Id.*, ¶¶ 51-55. Moreover, in early August 2020, Mr. Gunawardhana allegedly told Plaintiff that Ridge Hill could deliver the gloves by the end of August and promised to provide an "inspection report," which he never did. *Id.*, ¶ 57.

When Ridge Hill had not delivered the gloves to Plaintiff by August 25, 2020, Plaintiff terminated the Agreement with Ridge Hill and demanded repayment of the $4,630,874 it had paid. *Id.*, ¶ 64. Plaintiff alleges that as a result of Ridge Hill's failure to deliver the gloves, Plaintiff suffered lost profits in the amount of $676,040 and was forced to pay its lender in excess of $650,000 in interest. *Id.*, ¶ 72.

## C.     Plaintiff's Allegations Against The Petrichor Defendants

Plaintiff alleges that, on July 28, 2020, Mr. Gunawardhana forwarded an email from Ms. Vaidyanathan to Plaintiff. *Id.*, ¶ 49. There is no allegation that Ms. Vaidyanathan knew that Mr. Gunawardhana intended to forward the email to Plaintiff, or even that Ms. Vaidyanathan or any other Petrichor Defendant was aware of Plaintiff's identity at this time. *See id.* Plaintiff alleges that the forwarded email claimed that "government intervention" in Vietnam was delaying Plaintiff's order but that the Petrichor Defendants' connections in Vietnam would provide a "big advantage" and that the gloves would be ready for delivery shortly. Plaintiff asserts in conclusory

fashion that the claims in that email were false but pleads no facts supporting that assertion. *Id.*

According to the Complaint, Ridge Hill disclosed to Plaintiff that it was working with the Petrichor Defendants to fulfill Ridge Hill's obligations under the Agreement and that Ridge Hill had transferred Plaintiff's deposit to the Petrichor Defendants. *Id.*, ¶ 58. The Complaint further alleges that Mr. Nateshan provided Plaintiff with payment receipts from the Petrichor Defendants to a factory that was manufacturing Plaintiff's gloves. *Id.*, ¶ 59. Plaintiff claims that they "later learned that the factory receipts were apparently fraudulent," but do not plead any facts supporting this bald assertion. *Id.* Plaintiff also alleges that, on August 4, 2020, Mr. Fletcher forwarded another email from Ms. Vaidyanathan, which in turn forwarded an email from SGS Vietnam Ltd., a third-party inspection company, scheduling an inspection for August 7, 2020. *Id.*, ¶ 60.

On August 27, 2020, Ms. Vaidyanathan sent a letter to Plaintiff in her capacity as a director of Petrichor Malaysia. *Id.*, ¶ 66. According to the Complaint, the letter's subject was "Acceptance for refund of funds paid for purchase of Nitrile Gloves," and the letter stated that Petrichor Malaysia "will refund the amount paid for the supply of Nitrile powder free gloves from Vietnam on FOB basis." *Id.* The letter also allegedly stated that although the funds were transferred to the entity now known as Petrichor UK, Petrichor Malaysia would return the funds. *Id.* The Complaint does not allege that any of the Petrichor Defendants received any consideration or benefit from their alleged promise to return Plaintiff's deposit, nor does the Complaint allege that the Petrichor Defendants – and not, for example, the factory in Vietnam – were in possession of those funds. *See generally id.*

On September 2, 2020, Plaintiff received a payment of $1 million by wire from Petrichor UK. *Id.*, ¶ 67. Then, on September 15, 2020, Plaintiff received an additional payment of $1 million by wire from Petrichor Malaysia. *Id.* Finally, on or around October 26, 2020, Petrichor

Malaysia allegedly transferred $200,000 to Ridge Hill, which Ridge Hill then transferred to Plaintiff. *Id.*, ¶ 68.

On October 31, 2020, Mr. Nateshan, in his capacity as Group Chief Executive Officer for the entity now known as Petrichor UK, sent a letter to Ridge Hill (the "Oct. 31 Letter") with the subject "Refund of the amount paid towards purchase of Nitrile Gloves on account of cancellation of order." *Id.*, ¶ 69. The Complaint does not attach the Oct. 31 Letter but alleges that it stated that De Raj, Petrichor UK, and Petrichor Malaysia had paid $2.2 million to Plaintiff and that an additional $2,430,836.65 remained owing to fully refund Plaintiff's deposit. *Id.* The Oct. 31 Letter also allegedly confirmed that De Raj, Petrichor UK, and Petrichor Malaysia would make five (5) payments to Plaintiff totaling $2,430,836.65 during the period November 16, 2020 through December 30, 2020. *Id.*[4] As the text of the Oct. 31 Letter makes clear, Mr. Nateshan stated that the Petrichor Defendants were making refund payments to Plaintiff as a "goodwill gesture" despite the fact that the V Glove factory in Vietnam had not issued a refund to the Petrichor Defendants. *See* Nateshan Declaration, Ex. A (Oct. 31 Letter).[5] Moreover, Mr. Nateshan stated that he "exepct[ed] to make the . . . payments" to Plaintiff but that he could not commit to doing so, and that the Petrichor Defendants would endeavor to get the factory to refund the full deposit but that there could be penalties for the cancelled order. *See id.*

On November 29, 2020, Mr. Nateshan sent a follow-up letter to Plaintiff (the "Nov. 29 Letter"). *See* Nateshan Declaration, Ex. B (Nov. 29 Letter). The Nov. 29 Letter reiterated that the

---

[4] Again, the Complaint does not allege that any of the Petrichor Defendants received any consideration or benefit from their alleged promise to repay Plaintiff's deposit. *See generally id.*

[5] *Purjes v. Plausteiner*, No. 15-CV-2515 (VEC), 2016 U.S. Dist. LEXIS 16345, at *13 (S.D.N.Y. Feb. 10, 2016) (on a motion to dismiss, the Court may consider any documents incorporated into the complaint by reference and, even where not incorporated by reference, documents integral to the complaint where the complaint "relies heavily upon its terms and effect.") (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

Petrichor Defendants' offer to attempt to repay Plaintiff's deposit with their own funds was a "goodwill gesture" only, and that the Petrichor Defendants had still not been able to obtain a refund from the Vietnamese factory due to Plaintiff's premature termination of its order. *Id.*

Notwithstanding the Petrichor Defendants' explicit statements that their attempts to refund Plaintiff's deposit was simply a "goodwill gesture" and that the factory in Vietnam had not refunded the deposit, the Complaint alleges in broad and conclusory fashion that "Defendants have failed to make any additional payments to Plaintiff and have retained the funds for their personal benefit." Complaint, ¶ 70.

## D.     Plaintiff's Causes Of Action Against The Petrichor Defendants

The Complaint asserts a cause of action for fraudulent inducement against all defendants, alleging that "Defendants" (without specifying which defendants) "fraudulently induced Plaintiff to enter into the Agreement" (*i.e.*, the mid-July 2020 Agreement between Ridge Hill and Plaintiff). *Id.*, ¶ 74. Plaintiff further alleges that the Petrichor Defendants aided and abetting Ridge Hill and its agents' alleged fraud by "providing false and fraudulent documents and communications to Ridge Hill and its agents with the knowledge that such fraudulent documents would be sent to and relied upon by Plaintiff, and by receiving Plaintiff's deposit from Ridge Hill for the benefit of all Defendants." *Id.*, ¶ 85.

The Complaint also alleges that the Petrichor Defendants breached a contract (it does not specify what this contract is) by failing to "answer to Plaintiff for the debts of Ridge Hill," as they had allegedly promised to do. *Id.*, ¶¶ 96-97. In fact, as the correspondence between Plaintiff and the Petrichor Defendants (that Plaintiff appears to claim forms a contract) makes clear, the Petrichor Defendants' attempts to refund the deposit that Plaintiff had paid to Ridge Hill was simply a "goodwill gesture" while the Petrichor Defendants were attempting to recover that deposit from the factory in Vietnam. *See* Nateshan Declaration, Exs. A and B (Oct. 31 and Nov. 29

Letters).

Finally, the Complaint asserts the quasi-contractual causes of action of (i) money had and received and (ii) unjust enrichment against all defendants. Complaint, ¶¶ 100-107.

## ARGUMENT

The Complaint asserts the following causes of action against the Petrichor Defendants: (1) breach of contract; (2) fraudulent inducement; (3) aiding and abetting fraud; (4) money had and received; and (5) unjust enrichment. All of those claims should be dismissed with prejudice, for the reasons stated below.

**A.** **The Complaint Should Be Dismissed Because The Petrichor Defendants Are Not Subject To Personal Jurisdiction In New York**

The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because the Petrichor Defendants are not subject to either general or specific jurisdiction in New York.

### 1. Legal standards

A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant. *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 322-23 (S.D.N.Y. 2017) (citing *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 U.S. Dist. LEXIS 10739 (S.D.N.Y. June 25, 2003)). To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction. *Id.*, 256 F. Supp. 3d at 323 (citing *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). Moreover, "a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would lack the factual specificity necessary to confer jurisdiction." *Id.* (citing *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 U.S. Dist. LEXIS 156521 (S.D.N.Y. Nov. 4, 2014)). In addition, "[w]hen the Court is confronted by a motion raising a combination of Rule 12(b)

defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint." *Id.* (citations omitted).

To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances. *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citing *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013)). For purposes of this initial inquiry, a distinction is made between specific jurisdiction and general jurisdiction. *Id.* (citing *Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)). Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts. *Id.*

### 2. <u>This Court does not have general jurisdiction over the Petrichor Defendants</u>

A corporation may be subject to general jurisdiction only if it is "essentially at home" in that state. *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)). A corporate defendant is generally considered "at home" only in its state of incorporation and its principal place of business. *See UBS AG*, 882 F.3d at 343 ("[A]side from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business.") (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)); *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Similarly, an individual defendant is only subject to general jurisdiction in his or her domicile. *In re Lifetrade Litig.*, No. 17 Civ. 2987 (JPO), 2021 U.S. Dist. LEXIS 59738, at *15 (S.D.N.Y. Mar. 29, 2021).

Here, Petrichor Malaysia and Petrichor UK are incorporated in and have their principal places of business in Malaysia and the UK, respectively. *See* Complaint, ¶¶ 10-11. Moreover, Mr. Nateshan and Ms. Vaidyanathan are residents of Malaysia. Nateshan Declaration, ¶ 3. Accordingly, there is no basis for general jurisdiction pursuant to C.P.L.R. § 301 over any of the Petrichor Defendants, and none has been asserted. *See Magdalena v. Lins*, 123 A.D.3d 600, 999 N.Y.S.2d 44, 45 (1st Dep't 2014) (no general jurisdiction under C.P.L.R. § 301 since defendant is not incorporated in New York and does not have its principal place of business in New York).

### 3. This Court does not have specific jurisdiction over the Petrichor Defendants

Notably, the Complaint does not even assert that the Petrichor Defendants are subject to personal jurisdiction in New York. *See generally* Complaint. Even if that omission could be excused, the Complaint's failure to any plead facts supporting the exercise of personal jurisdiction over the Petrichor Defendants is fatal to Plaintiff's claims against them.

In New York, the Court must first determine whether specific jurisdiction is appropriate pursuant to the State's long-arm jurisdiction statute, C.P.L.R. § 302(a). *Deitrick v. Gypsy Guitar Corp.*, No. 16 Civ. 616 (ER), 2016 U.S. Dist. LEXIS 179481, at *10 (S.D.N.Y. Dec. 28, 2016). If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause of the United States Constitution. *Id.* (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).

"Under Section 302(a), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent: (1) 'transacts any business within the state or contracts anywhere to supply goods or services in the state;' (2) 'commits a tortious act within the state . . . ;' or (3) 'commits a tortious act without the state causing injury to person or property within the

state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.'" *Id.* at *10-11 (quoting N.Y.C.P.L.R. § 302(a)(1)-(3)).

"Under § 302(a)(1), a court examines (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Id.* (citing *Best Van Lines*, 490 F.3d at 246). A defendant transacts business within the meaning of § 302(a)(1) when it purposefully "avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws." *Id.* (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 880 N.E.2d 22, 26, 849 N.Y.S.2d 501 (2007)). To determine whether a sufficient nexus exists between the claim asserted and the defendant's actions in New York, a court must evaluate the "totality of the circumstances surrounding defendants' activities in New York in connection with the matter giving rise to the lawsuit." *Id.* at *12 (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997)).

Here, the Complaint fails to allege any facts suggesting that any of the Petrichor Defendants do business in New York, let alone committed a tortious act within New York. *See generally* Complaint; *see also* Nateshan Declaration, ¶ 7 (stating that none of the Petrichor Defendants do business in New York). Accordingly C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(2) do not provide a basis for asserting personal jurisdiction over the Petrichor Defendants. *See Gypsy Guitar Corp.*, 2016 U.S. Dist. LEXIS 179481, at *13-14 (conclusory claim that defendant does business in New York "is insufficient for a *prima facie* showing of jurisdiction" under § 302(a)(1)); *Klutz v. Yagoozon, Inc.*, No. 16 Civ. 4538 (JSR), 2016 U.S. Dist. LEXIS 133841, at *4 (S.D.N.Y.

Sept. 20, 2016) ("Plaintiff's conclusory allegation concerning defendant's New York business is insufficient to establish personal jurisdiction."); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997) (Courts narrowly interpret C.P.L.R. section 302(a)(2) to reach "only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act.").

The Petrichor Defendants are also not subject to specific jurisdiction under C.P.L.R. § 302(a)(3). First, Plaintiff has failed to adequately plead that the Petrichor Defendants committed any tortious act. All that the Complaint alleges with respect to the Petrichor Defendants was that the Petrichor Defendants promised to make efforts to refund Plaintiff's deposit while seeking return of that deposit from the Vietnamese factory. *See* Complaint, ¶¶ 66, 69; Nateshan Declaration, Exs. A and B (Oct. 31 and Nov. 29 Letters). The timeline in the Complaint makes clear that Plaintiff had entered into the Agreement with Ridge Hill, and transferred the deposit for its order of gloves to Ridge Hill, long before Plaintiff had any communication with the Petrichor Defendants. *See id.*, ¶¶ 39-44, 49, and 58. Thus, Plaintiff could not have relied upon any statement by the Petrichor Defendants in either entering into the Agreement or making the deposit payment. The Complaint's allegations that the Petrichor Defendants aided and abetted Ridge Hill's alleged fraud are similarly deficient, as they are based on nothing but conclusory claims unsupported by any plausible allegations of fact. *See Daventree Ltd v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 762-63 (S.D.N.Y. 2004) (finding no personal jurisdiction under conspiracy theory because there was no factual basis from which court could impute conduct of putative co-conspirators to defendants); *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975) ("New York law seems to be clear that the bland assertion of conspiracy or agency is insufficient to establish jurisdiction [under the co-conspirator and aider and abettor doctrines]."); *Lamarr v. Klein*, 35

A.D.2d 248, 250-51 (1st Dep't 1970) (holding that conclusory statements about defendant's role in conspiracy were insufficient to establish jurisdiction under the co-conspirator doctrine). As such, the Complaint does not properly allege that the Petrichor Defendants committed **any** tort, let alone a fraud-based tort subject to heightened pleading standards.[6] Because Plaintiff has failed to plead that the Petrichor Defendants committed any tortious act, they cannot be subject to personal jurisdiction under C.P.L.R. § 302(a)(3). *See Convergen Energy LLC v. Brooks*, No. 20-cv-3746 (LJL), 2020 U.S. Dist. LEXIS 169256, at *29-30 (S.D.N.Y. Sep. 16, 2020) (finding no personal jurisdiction under Rule 302(a)(3) because, *inter alia*, the plaintiff's allegations "do not come close to establishing claims of aiding and abetting . . . fraud"); *Segal v. Bitar*, No. 11 Civ. 4521 (LBS), 2012 U.S. Dist. LEXIS 10812, at *24-25 (S.D.N.Y. Jan. 30, 2012) (no personal jurisdiction where plaintiffs alleged no facts demonstrating knowledge or substantial assistance); *DH Servs., LLC v. Positive Impact, Inc*., No. 12 Civ. 6153 (RA), 2014 U.S. Dist. LEXIS 14753, at *28-32 (S.D.N.Y. Feb. 5, 2014) (dismissing claims for lack personal jurisdiction where plaintiff failed to demonstrate that defendants' act was tortious).

Second, Plaintiff fails to allege, let alone make a *prima facie* showing, that the Petrichor Defendants "derive[] substantial revenue from interstate or international commerce," as required under C.P.L.R. § 302(a)(3)(ii). *See Gypsy Guitar Corp*., 2016 U.S. Dist. LEXIS 179481, at *18 ("Plaintiff fails to meet his burden of establishing personal jurisdiction over [defendant] under Section 302(a)(3) because Plaintiff does not make a prima facie showing that [defendant] derives

---

[6] The breach of contract claim and quasi-contractual claims asserted against the Petrichor Defendants are not torts, and therefore do not apply under C.P.L.R. § 302(a)(3). *See Orkin v. Swiss Confederation*, 770 F. Supp. 2d 612, 617 n.35 (S.D.N.Y. 2011) ("Unjust enrichment [] is not a tort action at all, but an equitable quasi-contract doctrine.") (citations omitted); *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 358 (S.D.N.Y. 2014) ("New York law limits jurisdiction to tort claims, so plaintiff cannot rely on this provision to authorize specific jurisdiction for its contract claim.") (citation omitted).

substantial revenue from interstate or international commerce."); *Richtone Design Grp. L.L.C. v. Classical Pilates, Inc.*, No. 06 Civ. 0547 (NRB), 2006 U.S. Dist. LEXIS 64370, at *12-13 (S.D.N.Y. Aug. 21, 2006) (holding that plaintiff's conclusory allegation challenging defendant's claim that it did not receive substantial revenue from interstate commerce was insufficient to make a prima facie showing). For this reason also, Plaintiff has failed to establish that the Petrichor Defendants are subject to personal jurisdiction in New York pursuant to C.P.L.R. § 302(a)(3)(ii).

Finally, even if the Complaint met the test of New York's long-arm statute (it does not), due process concerns would bar the assertion of personal jurisdiction over the Petrichor Defendants because Plaintiff has failed to show that the Petrichor Defendants have sufficient minimum contacts with New York. In particular, Plaintiff fails to adequately allege that the Petrichor Defendants (i) purposefully availed themselves of the privilege of doing business in New York and could foresee being haled into court there or (ii) that their conduct expressly aimed at New York with the knowledge that substantial injury would be felt there. *See In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 234-35 (S.D.N.Y. 2019) (holding that due process principles barred the exercise of personal jurisdiction over foreign defendants where the plaintiff failed to adequately allege purposeful availment or purposeful direction). All the Complaint alleges with respect to the Petrichor Defendants is that they contracted with an Australian entity (Ridge Hill) to manufacture gloves, and that after Ridge Hill's U.S. customer paid a deposit, the Petrichor Defendants promised to attempt to repay that deposit. *See* Complaint, ¶¶ 58, 66, and 69. There is no allegation that the Petrichor Defendants even knew the identity of Plaintiff (let alone that Plaintiff was based in New York) prior to Plaintiff entering into the Agreement and making a deposit payment to Ridge Hill. *See id.*, ¶¶ 39-44, 49, and 58. Because Plaintiff fails to adequately allege that the Petrichor

Defendants had minimum contacts with New York, due process principles also bar this Court's exercise of personal jurisdiction over the Petrichor Defendants. *See In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d at 234-35.

**B.** **Plaintiff's Allegations Against The Petrichor Defendants Should Be Dismissed For Failure To State A Claim**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Geoffrey A. Orley Revocable Tr. v. Genovese*, No. Civ. 8460 (ER), 2020 U.S. Dist. LEXIS 19418, at *13 (S.D.N.Y. Feb. 5, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "The plaintiff must allege sufficient facts to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Because Plaintiff fails to allege facts sufficient to meet the plausibility standard, in addition to being barred for lack of personal jurisdiction, all of Plaintiff's claims against the Petrichor Defendants should be dismissed for failure to state a claim.

First, the claims against the individual Petrichor Defendants fail to adequately allege that those individuals engaged in any actionable conduct and Plaintiff's alter ego claims are wholly conclusory. Second, Plaintiff's breach of contract claim is deficient because it fails to properly allege the existence of a contract between Plaintiff and the Petrichor Defendants. Third, Plaintiff's fraud and aiding and abetting fraud claims do not meet the plausibility standard for pleadings, let alone the heightened pleading requirements for fraud claims, because, *inter alia*, the Complaint fails to allege that Plaintiff relied upon any statement made by the Petrichor Defendants to its detriment. Fourth, Plaintiff's quasi-contractual claims should be dismissed because they are

precluded by the Agreement with Ridge Hill. Put simply, Plaintiff's dispute is with Ridge Hill, not with the Petrichor Defendants, and all of Plaintiff's claims against the Petrichor Defendants should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

1. **Plaintiff's claims against the individual Petrichor Defendants should be dismissed**

The Complaint asserts causes of action against Mr. Nateshan and his wife, Ms. Vaidyanathan, for fraudulent inducement, aiding and abetting fraud, breach of contract, money had and received, and unjust enrichment. Complaint, ¶¶ 73-88, 95-107. All of those claims should be dismissed because the Complaint fails to allege actionable conduct by those individuals and fails to plead facts supporting the claim that Mr. Nateshan and his wife are alter egos of the Petrichor Entities.

"Under New York law, a court may pierce the corporate veil where 1) 'the owner exercised complete domination over the corporation with respect to the transaction at issue,' and 2) 'such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" *MAG Portolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co*., 122 F.3d 130, 134 (2d Cir. 1997)). The standards for veil-piercing in the United Kingdom and Malaysia, the jurisdictions in which Petrichor UK and Petrichor Malaysia are incorporated,[7] are similar to that of New York. *See Prest v Petrodel Resources Ltd*, [2013] UKSC 34, [2013] 2 AC 415 (holding that under English law the corporate veil may only be pierced where a person is under an existing legal obligation or liability or subject to an existing legal restriction which he deliberately evades or whose enforcement he

---

[7] The forum state's choice of law principles determine which state's law applies to determine veil piercing. *See Kalb, Voorhis & Co v. Am. Fin. Corp*., 8 F.3d 130, 132 (2d Cir. 1993). Under New York choice of law principles, "the law of the state of incorporation determines when the corporate form will be disregarded." *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1456 (2d Cir. 1995) (citation omitted).

deliberately frustrates by interposing a company under his control); *Gurbachan Singh & Ors v*

*Vellasamy Pennusamy & Ors & Or Appeals*, (Civil Appeal No. 02(f)-58-09/2013(A), 27

November 2014) [2015] 1 MLJ (holding that under Malaysian law the corporate veil may only be

pierced if a corporation was set up for fraudulent purposes or established to avoid an existing

obligation, or to prevent the abuse of a corporate legal personality).  True and correct copies of the

*Prest* and *Gurbachan* cases are attached to the Declaration of Daniel P. Goldberger as Exhibits 1

and 2, respectively.

Here, there are no allegations that would justify piercing the corporate veil under the laws

of New York, England, or Malaysia.  All the Complaint alleges in support of its "alter ego" claim

is that, upon only information and belief:

- the Petrichor Entities "use each other's funds for their own purposes and for the

  personal benefit of [Mr.] Nateshan and [Ms.] Vaidyanathan, and are not treated as

  independent profit centers;"  (Complaint, ¶ 14)

- the assets of De Raj (not one of the Petrichor Defendants) were "transferred to

  Petrichor Malaysia and Petrichor UK for [Mr.] Nateshan and [Ms.] Vaidyanathan's

  personal benefit;" (*id.*) and

- Petrichor Malaysia and Petrichor UK "commingle funds among each other, do not

  deal with each other at arm's length, pay and guarantee the debts of each other,

  and use each other's property as if it were their own."  *Id.*

Such allegations fail to meet the test for piercing the corporate veil and imputing the conduct of

the Petrichor Entities to Mr. Nateshan and his wife, Ms. Vaidyanathan.

First, the only ***facts*** that Plaintiff alleges are that, in her letter to Plaintiff dated August 27,

2020, Ms. Vaidyanathan stated that the Petrichor Defendants "will be using our group resources"

to refund Plaintiff's deposit. Complaint, ¶ 66. In a case of the adage that "no good deed goes unpunished," Plaintiff seeks to use the Petrichor Defendants' attempts to help Plaintiff recover its deposit (before they had even received a refund from the Vietnamese factory) by using their "group resources" to hold Mr. Nateshan and his wife ***personally liable***. In any event, offering to refund a deposit using funds from various affiliates is not grounds for piercing the corporate veil and holding Mr. Nateshan and Ms. Vaidyanathan liable for the alleged conduct of the Petrichor Entities. All of the other allegations Plaintiff purports to rely upon for its "alter ego" theory are unfounded and conclusory speculation pleaded upon information and belief alone. *See* Complaint, ¶¶ 14 and 81. That is insufficient to justify ignoring the corporate form and holding a corporation's officers personally liable. *See Dumont v. Litton Loan Servicing, LP*, No. 12-cv-2677-ER-LMS, 2014 U.S. Dist. LEXIS 26880, at *84 (S.D.N.Y. Mar. 3, 2014) (dismissing alter ego claim where complaint was "totally devoid of solid, nonconclusory allegations" in support of a corporate veil-piercing claim) (citation omitted); *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit L.P.*, 491 B.R. 335, 351 (S.D.N.Y. 2013) (dismissing a claim in light of "the absence of adequate factual allegations sufficient to raise a plausible inference that either prerequisite for veil piercing is present").

Second, Plaintiff fails to allege that Mr. Nateshan and Ms. Vaidyanathan's alleged "domination" of the corporate Petrichor Defendants "was used to commit a fraud or wrong that injured [Plaintiff]," *Merlin Biomed Grp. LLC*, 268 F.3d at 63, or that the corporate Petrichor Defendants were created for fraudulent purposes or used to evade some existing obligation. *See Prest*, [2013] UKSC 34, [2013] 2 AC 415; *Gurbachan Singh*, (Civil Appeal No. 02(f)-58-09/2013(A), 27 November 2014). There is no basis in law or fact to pierce the corporate veil here and Plaintiff's baseless claims against Mr. Nateshan and Ms. Vaidyanathan should be dismissed.

## 2. Plaintiff's claim for breach of contract should be dismissed because Plaintiff fails to adequately allege that the Petrichor Defendants had a contractual relationship with Plaintiff

Plaintiff's claim for breach of contract against the Petrichor Defendants should be dismissed for the simple reason that the Complaint fails to adequately allege the existence of an agreement between Plaintiff and any of the Petrichor Defendants.

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the [party bringing the claim], (3) breach of contract by the [other party], and (4) damages." *Mtume v. Sony Music Entm't*, No. 18 Civ. 6037 (ER), 2020 U.S. Dist. LEXIS 150143, at *11 (S.D.N.Y. Aug. 19, 2020) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). "When pleading these elements, a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." *Id.* (quoting *Wolff v. Rare Medium, Inc*., 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003)).

The Complaint alleges that Plaintiff and Ridge Hill entered into the Agreement on July 16, 2020. Complaint, ¶ 39. Plaintiff does not allege that any of the Petrichor Defendants were parties to the Agreement, or even that the Petrichor Defendants were aware of the existence of Plaintiff or the Agreement as of July 16, 2020. *See generally id*. All that Plaintiff alleges in support of its breach of contract claim against the Petrichor Defendants is that the Petrichor Defendants (and De Raj, a separate entity) "agreed in writing to answer to Plaintiff for the debts of Ridge Hill," and that the Petrichor Defendants "failed to perform." *Id.*, ¶¶ 96-97. As the correspondence between the Petrichor Defendants and Plaintiff (*i.e.*, the "writing" that Plaintiff relies upon for its breach of contract claim) makes clear, the Petrichor Defendants stated that, as a goodwill gesture to Ridge Hill's customer, they would attempt to refund Plaintiff's deposit while concurrently seeking return of those funds from the Vietnamese factory. *See* Nateshan Declaration, Exs. A and B. In other

words, the Petrichor Defendants promised to do what they could to help Plaintiff recover its deposit, despite having no contractual obligation to do so, and absent any commitment by, or benefit received from, Plaintiff. A promise to do something one is not obliged to do, and for which one does not expect any benefit from the promisee, does not create a contractual obligation. *See Wexler v. Allegion (Uk)*, No. 16 Civ. 2252 (ER), 2018 U.S. Dist. LEXIS 54655, at *32-33 (S.D.N.Y. Mar. 29, 2018) (breach of contract claim dismissed because the plaintiff failed to allege consideration for the defendant's promise); *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 375 (S.D.N.Y. 2015) (dismissing breach of contract claim because "Plaintiff fails to clearly identify the source of [the defendant's] obligation or the contractual language that defines it"); *Levy v. Bessemer Tr. Co*., No. 97 Civ. 1785 (JFK), 1997 U.S. Dist. LEXIS 11056, at *13-14 (S.D.N.Y. July 30, 1997) (dismissing breach of contract claim where the plaintiff alleged that the defendant made certain representations but failed to include "specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue").

Because all that Plaintiff alleges is that the Petrichor Defendants promised to try to help Plaintiff recover its deposit, Plaintiff fails to adequately allege the existence of any valid contract between Plaintiff and the Petrichor Defendants. Accordingly, Plaintiff's claim for breach of contract against the Petrichor Defendants should be dismissed for failure to state a claim.

### 3. Plaintiff's fraud-related claims against the Petrichor Defendants should be dismissed

The Complaint asserts claims for fraud in the inducement and for aiding and abetting fraud against all of the Petrichor Defendants. Plaintiff's fraud-related claims should be dismissed for the independent reason that Plaintiff fails to properly plead ***any*** of the elements for fraud or aiding and abetting fraud.

### a)      Plaintiff's claim for fraud in the inducement should be dismissed

To state a claim for fraud under New York law, a plaintiff must show that: (1) the defendant made a false representation as to a material fact; (2) the defendant had the intent to defraud; (3) the false representation induced reliance; and (4) the plaintiff was harmed as a result. *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995); *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,* 57 F.3d 146, 153 (2d Cir. 1995). Additionally, under Federal Rule of Civil Procedure 9(b), fraud claims must be pled with particularity. *Beth Isr. Med. Ctr. v. Verizon Bus. Network Servs.*, No. 11 Civ. 4509 (RJS), 2013 U.S. Dist. LEXIS 49825, at *11-12 (S.D.N.Y. Mar. 18, 2013); *Rich v. Maidstone Financial, Inc*., No. 98 Civ. 2569 (DAB), 2002 U.S. Dist. LEXIS 24510, at *29 (S.D.N.Y. Dec. 20, 2002) ("The 'particularity requirement' contained in Rule 9(b) is substantial."). Consequently, "[c]onclusory statements and allegations are not enough to meet the Rule 9(b) pleading requirements." *Musalli Factory for Gold & Jewelry Co. v. JP Morgan Chase Bank, N.A*., 382 F. App'x 107, 108 (2d Cir. 2010); *see also Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989) ("[A] complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."). Moreover, where, as here, fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of as to each defendant. *Rich*, 2002 U.S. Dist. LEXIS 24510, at *30.

Plaintiff alleges that "Defendants fraudulently induced Plaintiff to enter into the Agreement by making materially false and misleading representations, and omitting material information peculiarly within Defendants' knowledge." Complaint, ¶ 74. Because Plaintiff has utterly failed to satisfy the aforementioned criteria, its fraud claim against the Petrichor Defendants must be dismissed.

First, Plaintiff's fraud claim should be dismissed because it improperly alleges fraudulent misconduct by "Defendants" and fails to "set forth separately the acts complained of by each defendant." *Rich*, 2002 U.S. Dist. LEXIS 24510, at \*30 (internal quotations omitted). The Complaint alleges various misrepresentations by Ridge Hill and its agents leading up to the execution of the Agreement on July 16, 2020. However, the Complaint contains ***no allegations*** relating to the Petrichor Defendants until after Plaintiff and Ridge Hill had entered into the Agreement. Complaint, ¶¶ 39, 49, 58-60. Indeed, the Complaint does not even allege that the Petrichor Defendants knew of Plaintiff's existence at the time the Agreement was executed. As such, the Petrichor Defendants could not, as a matter of both fact and law, have "fraudulently induced Plaintiff to enter into the Agreement." Complaint, ¶ 74.

Second, Plaintiff fails to plead any of the elements of fraud, let alone with the particularity required under Rule 9(b). Plaintiff does not plead that the Petrichor Defendants "made a false representation as to a material fact" that induced Plaintiff to enter into the Agreement. Likewise, the Complaint is devoid of non-conclusory allegations that the Petrichor Defendants "had the intent to defraud" Plaintiff. Plaintiff also does not allege that any false representation by the Petrichor Defendants "induced reliance" on Plaintiff's part, nor that Plaintiff was harmed as a result.

The sum total of Plaintiff's allegations against the Petrichor Defendants is that they promised to help Plaintiff recover its deposit (despite having no obligation to do so) and were unable to. That is not fraud and Plaintiff's fraud claim against the Petrichor Defendants should be dismissed.

      **b)**     <u>**Plaintiff's claim against the Petrichor Defendants for aiding and abetting fraud should be dismissed**</u>

The elements of aiding and abetting fraud under New York law are: (1) the existence of a fraud; (2) a defendant's knowledge of the fraud; and (3) that the defendant provided substantial

assistance to advance the fraud's commission. *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014). Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. *UBS AG*, 882 F.3d at 345. Moreover, "[i]n alleging the requisite 'substantial assistance' by the aider and abettor, the complaint must allege that the acts of the aider and abettor proximately caused the harm to the [plaintiff] on which the primary liability is predicated." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985). Aider and abettor liability will not attach where the injury was not a direct or reasonably foreseeable result of the defendant's conduct. *Id.* Moreover, claims of aiding and abetting common law fraud are subject to the same pleading requirements under Rule 9(b) as claims of common law fraud. *See Filler v. Hanvit Bank*, No. 01 Civ. 9510 (MGC), 2003 U.S. Dist. LEXIS 15950, at *5 (S.D.N.Y. Sep. 12, 2003). Likewise, claims for aiding and abetting fraud must make particularized allegations against ***each defendant***. *Id.* (stating that "[r]hetoric is not a substitute for specificity," and dismissing claims for aiding and abetting fraud for, *inter alia*, failure to plead facts relating to each defendant).

Plaintiff makes the conclusory allegation that the Petrichor Defendants:

> knowingly participated in the fraud and provided substantial assistance by knowingly providing false and fraudulent documents and communications to Ridge Hill and its agents with the knowledge that such fraudulent documents would be sent to and relied upon by Plaintiff, and by receiving Plaintiff's deposit from Ridge Hill for the benefit of all Defendants.

Complaint, ¶ 85. Because Plaintiff has failed to sufficiently allege any of the elements for aiding and abetting fraud, that claim should be dismissed as to the Petrichor Defendants.

First, even if Plaintiff has properly pleaded a fraud claim against Ridge Hill (it has not), Plaintiff fails to adequately allege that the Petrichor Defendants had actual knowledge of the purported fraud. In that regard, the Complaint's allegations relating to the Petrichor Defendants

post-date the execution of the Agreement, and there is no allegation that the Petrichor Defendants knew of Plaintiff's existence at the time Plaintiff and Ridge Hill entered into the Agreement. *See* Complaint, ¶¶ 39-44, 49, and 58. As such, the Complaint's allegations of actual knowledge are nothing but conclusory statements that merely parrot the elements of an aiding and abetting fraud claim. *See Genovese*, 2020 U.S. Dist. LEXIS 19418, at *32-33 (dismissing aiding and abetting fraud claim for, *inter alia*, failure to plead actual knowledge and stating that "bare allegations that [defendant] knew . . . representations were false are conclusory, and therefore not sufficient to support an inference of actual knowledge").

Second, the Complaint fails to plead any ***facts*** suggesting any action by the Petrichor Defendants proximately caused damage to Plaintiff, let alone facts sufficient to meet the test for "substantial assistance." *See UBS AG*, 882 F.3d at 345-46; *Genovese*, 2020 U.S. Dist. LEXIS 19418, at *34 (dismissing aiding and abetting fraud claim for failure to plead substantial assistance). Again, there is no allegation that the Petrichor Defendants did or said ***anything*** prior to the execution of the Agreement with Ridge Hill that Plaintiff alleges it was fraudulently induced into entering. Likewise, the Complaint does not allege any conduct by the Petrichor Defendants (as opposed to Ridge Hill and its agents) prior to Plaintiff wiring its deposit to Ridge Hill. Accordingly, Plaintiff has failed to plead the element of substantial assistance.

Because Plaintiff has failed to adequately plead that the Petrichor Defendants had actual knowledge of, or provided substantial assistance to advance, any purported fraud, the Complaint's claims for aiding and abetting fraud should be dismissed as to the Petrichor Defendants. *See Genovese*, 2020 U.S. Dist. LEXIS 19418, at *31-34 (dismissing aiding and abetting fraud claim for failure to plead actual knowledge or substantial assistance).

**4.** **Plaintiff's quasi-contractual claims against the Petrichor Defendants should be dismissed because they are precluded by the Agreement with Ridge Hill**

The Complaint asserts quasi-contractual claims against all defendants, including the Petrichor Defendants, for money had and received and for unjust enrichment. Both of those claims should be dismissed as to the Petrichor Defendants because (i) they are precluded by the existence of the Agreement, which relates to the same subject matter and (ii) the Complaint fails to adequately allege that the Petrichor Defendants retained the deposit Plaintiff paid or were otherwise unjustly enriched.

The Complaint alleges that "Defendants received $4,630,874 belonging to Plaintiff and Defendants have benefitted from receipt of Plaintiff's money," and that "Defendants have been unjustly enriched at Plaintiff's expense." Complaint, ¶¶ 101, 105. However, the Complaint also makes clear that Plaintiff paid the $4,630,874 deposit *pursuant to its Agreement with Ridge Hill*. *See id.*, ¶ 40 ("The Agreement provided that . . . Plaintiff [would make] a 50% deposit payment to Ridge Hill."); *id.*, ¶ 43 ("Plaintiff would pay [the total purchase price of $9,261,748] in two 50% installments pursuant to the terms of the Agreement."); *id.*, ¶ 44 ("On July 20, 2020, Plaintiff wired the 50% deposit in the amount of $4,630,874 to Ridge Hill and, pursuant to the Agreement, Ridge Hill was required to have the gloves ready for delivery to Plaintiff by July 31, 2020.").

The existence of a valid and enforceable contract relating to the same subject matter precludes an unjust enrichment claim regardless of "whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." *Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998); *see also Stillwater Liquidating LLC v. Net Five Palm Pointe, LLC (In re Stillwater Asset Backed Offshore Fund Ltd.)*, No. 16 Civ. 8883 (ER), 2018 U.S. Dist. LEXIS 54558, at *36 (S.D.N.Y. Mar. 30, 2018) ("[R[ecent decisions in New York state courts and this District have found that the existence of a valid and binding

contract governing the subject matter at issue in a particular case precludes a claim for unjust enrichment even against a non-signatory to that agreement.") (citing *Law Debenture v. Maverick Tube Corp*., No. 06 Civ. 14320 (RJS), 2008 U.S. Dist. LEXIS 87438 (S.D.N.Y. Oct. 15, 2008)); *Beth Isr. Med. Ctr.*, 2013 U.S. Dist. LEXIS 49825, at *8-9 ("A valid and enforceable contract precludes quasi-contractual recovery in New York. Accordingly, Plaintiffs' unjust enrichment and money had and received claims are barred because there is an enforceable contract governing these claims.") (citing *Rensselaer Polytechnic Inst, v. Varian, Inc*., 340 F. App'x 747, 749 (2d Cir. 2009)); *Payday Advance Plus, Inc. v. Findwhat.com, Inc*., 478 F. Supp. 2d 496, 504-05 (S.D.N.Y. 2007) ("[The Complaint] does not allege that Advertising received any money other than a portion of the payments Payday made pursuant to its contract with Findwhat. . . [T]hese payments fall within the purview of the contract and hence there is no basis for an unjust enrichment claim against Advertising."); *ABF Capital Mgmt. v. Askin Capital Mgmt*., L.P., 957 F. Supp. 1308, 1333-34 (S.D.N.Y. 1997) ("Unjust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists.").

Here, Plaintiff paid a deposit to Ridge Hill pursuant to its valid and enforceable Agreement with Ridge Hill. If Plaintiff believes that Ridge Hill breached the Agreement by failing to deliver the gloves, Plaintiff may assert (as it has) a breach of contract claim against Ridge Hill. The law is clear, however, that Plaintiff may not assert quasi-contractual claims against other entities based upon the same subject matter as a valid and enforceable contract. Because Plaintiff's dispute is a contractual dispute with Ridge Hill, its quasi-contractual claims against the Petrichor Defendants should be dismissed.

Plaintiff's unjust enrichment claim is also deficient because Plaintiff fails to adequately

allege that the Petrichor Defendants benefited at Plaintiff's expense. Indeed, the correspondence that Plaintiff purports to rely upon for its breach of contract claim against the Petrichor Defendants reveals that the Vietnamese factory kept Plaintiff's deposit after it cancelled its order. *See* Nateshan Declaration, Exs. A and B. "A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff." *Bazak Int'l. Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004) (quoting 22A N.Y. Jur. 2d Contracts § 515). Here, all Plaintiff alleges is that Ridge Hill disclosed that it had transferred the deposit payment to the Petrichor Defendants, and, upon nothing but "information and belief," that the payment receipts from the Vietnamese factory that the Petrichor Defendants provided Plaintiff were "apparently fraudulent." Complaint, ¶¶ 58-59. Plaintiff provides no support for its unfounded allegation that the factory receipts were "fraudulent," and its claims are belied by the representations in its correspondence with the Petrichor Defendants, which make clear that the factory had not refunded Plaintiff's deposit even as the Petrichor Defendants were attempting to return that deposit from their own funds as a "goodwill gesture." *See* Nateshan Declaration, Exs. A and B.

Because Plaintiff's quasi-contractual claims are precluded by the Agreement and because Plaintiff fails to plead in non-conclusory fashion that the Petrichor Defendants retained Plaintiff's deposit, Plaintiff's claims for money had and received and for unjust enrichment should be dismissed as to the Petrichor Defendants.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Petrichor Defendants respectfully request that the Court dismiss the Complaint as against the Petrichor Defendants with prejudice.

Dated: August 11, 2021

DORSEY & WHITNEY LLP

By:    /s/ *Daniel P. Goldberger*
         Daniel P. Goldberger
         Kaleb McNeely
         51 West 52nd Street
         New York, New York 10019
         (212) 415-9200
         goldberger.dan@dorsey.com
         mcneely.kaleb@dorsey.com

         *Attorneys for Defendants Petrichor Capital Sdn Bhd, Petrichor Capital Trading Limited, Vaidyanathan Mulandram Nateshan, and Gayathri Vaidyanathan*